**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cr. No.: 19-10127-STA** |
| | ) | |
| **JODIE FRANKLIN STACEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

### POSITION OF PARTIES WITH RESPECT TO SENTENCING FACTORS (USA)

---

**COMES NOW** the United States of America, by and through Joseph C. Murphy, Jr., Acting United States Attorney for the Western District of Tennessee, and William Joshua Morrow, Assistant United States Attorney for the Western District of Tennessee, and hereby files this pleading, pursuant to Local Criminal Rule 32.1(d), to advise the Court that the government plans to raise the following legal objections to the Presentence Investigation Report (PSR) prepared in this case.

1.    <u>Paragraph 13 (Base Offense Level).</u>

Pursuant to the plea agreement in this case, the parties have agreed to recommend, under Fed. R. Crim. P. 11(c)(1)(C), that the defendant's base offense level be set at 14 under U.S.S.G. § 2K2.1(a)(6)(A).   Accordingly, the government objects the probation office's finding that the defendant's base offense level be set at 24 pursuant to § 2K2.1(a)(2).   The government submits that the defendant's prior convictions in Paragraphs 34-35 of the PSR for Initiation of a Process Intending to Result in the Manufacturing of Methamphetamine ("Initiation"), in violation of Tenn. Code Ann. § 39-

17-435, do not qualify as "controlled substance offenses" under U.S.S.G. § 4B1.2(b).

Therefore, the defendant's base offense level should be 14 pursuant to § 2K2.1(a)(6)(A).

Section 2K2.1(a)(2) specifies a base offense level of 24 for a violation of 18 U.S.C.

§ 922(g) when "the defendant committed any part of the instant offense subsequent to

sustaining at least two felony convictions of either a crime of violence or a controlled

substance offense."   It incorporates § 4B1.2(b)'s definition of "controlled substance

offense" as "an offense under federal or state law, punishable by imprisonment for a term

exceeding one year, that prohibits the manufacture, import, export, distribution, or

dispensing of a controlled substance … or the possession of a controlled substance …

with intent to manufacture, import, export, distribute, or dispense."   *See* U.S.S.G. § 2K2.1

comment. (n.1).

In determining whether a prior state conviction counts as a "controlled substance

offense" for Guidelines purposes, the Sixth Circuit's recent explanation as to the

application process governs:

> We first map out what conduct is criminalized under the guidelines'
> definition. Next, we do the same for conduct criminalized under the state
> law that led to the conviction. Finally, we overlay the two: if the outer edges
> of the state law—often the "least culpable conduct" that the law proscribes—
> extend past the guidelines' definition, then the conviction doesn't count; if,
> however, the boundaries of the state law and the guidelines' definition are
> coterminous, or the guidelines' definition sweeps more broadly, then the
> conviction counts. In other words, the guidelines must fully envelop the state
> law of conviction.

*United States v. Williams*, 850 Fed. Appx. 393, 397, 2021 U.S. App. LEXIS 8927 (6th Cir.

2021) (citing *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020); *United States v.*

*Havis*, 927 F.3d 382, 384-85 (6th Cir. 2019) (en banc) (per curiam); *Mathis v. United*

*States*, 136 S. Ct. 2243, 2248 (2016) (comparing elements in the ACCA context)).

2

The Sixth Circuit has also "emphasized that 'sentencing courts must presume that the conviction rested upon nothing more than the least of the acts criminalized.'" *Id.* (citing *United States v. Burris*, 912 F.3d 386, 406 (6th Cir. 2019) (en banc) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)). Thus, following circuit precedent, the Court must "first map out what conduct is criminalized under the guidelines' definition." *Id.* (citing *Garth*, 965 F.3d at 495). Second, the Court is required to map out "conduct criminalized under the state law that led to the conviction." *Id.* at 398 (citing *Garth*, 965 F.3d at 495). In so doing, the Court "must presume that the defendant's Initiation convictions "rested on nothing more than the least of the acts" criminalized by Tenn. Code Ann. § 39-17-435. *Id.* (citing *Burris*, 912 F.3d at 406). Finally, the Court must "overlay the two." *Id.* (citing *Garth*, 965 F.3d at 495).

As noted above, the term "controlled substance offense" includes the manufacturing, distributing, and dispensing of a controlled substance, as well as possessing with the intent to manufacture, distribute, or dispense a controlled substance, but it does not include initiating a process intending to result in the manufacturing of a controlled substance. The question thus becomes whether a violation of Tenn. Code Ann. § 39-17-435 equates to the Guidelines' definition of "manufacturing" a controlled substance.

Under federal law, "[t]he term 'manufacture' means the production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis …" 21

3

U.S.C. § 802(15).   At the time of Stacey's Initiation offenses, Tenn. Code Ann. § 39-17-435 provided, in pertinent part, as follows:

> **(a)**  It is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine.
>
> \*         \*         \*
>
> **(c)**  For purposes of this section, "initiates" means to ***begin the extraction*** of an immediate methamphetamine precursor from a commercial product, to ***begin the active modification*** of a commercial product for use in methamphetamine creation, or ***to heat or combine*** any substance or substances that can be used in methamphetamine creation.
>
> \*         \*         \*

Tenn. Code Ann. § 39-17-435 (2010 & 2011) (emphasis added).**[1]**

Importantly, under Tennessee law, the term "manufacture" is – and was in 2010 and 2011 – defined almost identically to the federal definition of manufacture in 21 U.S.C. § 802(15).   *See* Tenn. Code Ann. § 39-17-402(15) (2010-11, 2021) ("Manufacture means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis …").   By separately criminalizing initiation and manufacture, Tennessee obviously believes there is a difference between the two offenses, as there would be no reason to enact two different statutes to prohibit the exact same conduct.   And, based on the wording of the two statutes, the federal definition of "manufacture" sweeps more broadly than the definition of "initiation" in § 39-17-435.

---

[1] The current version of § 39-17-435 is identical to the 2010 and 2011 versions of the statute.

4

As noted above, to "initiate" means to *begin* the extraction of an immediate methamphetamine precursor from a commercial product, to *begin* the active modification of a commercial product for use in methamphetamine creation, or to *heat or combine* any substance or substances that *can be used* in methamphetamine *creation*.   It prohibits conduct that constitutes the beginning of the manufacturing process, but which falls short of actually completing that process.   Conversely, the term "manufacture" under federal (and Tennessee) law only includes the completed acts of "production, preparation, propagation, compounding, conversion or processing of a drug or other substance."

Thus, after overlaying the two definitions, the outer edges of initiation under Tennessee law – *i.e.*, the "least culpable conduct" that the law proscribes – extends past the Guidelines' definition of manufacture.   Accordingly, the defendant's prior Initiation convictions do not constitute "controlled substance offenses" under § 4B1.2(b), and his base offense level should be 14 under § 2K2.1(b)(4)(A).[2]

2.  Paragraph 88 (Applicable Guideline Range).

Based on the objection set forth above, the government submits that the applicable guideline range in this case is **37-46 months'** imprisonment.

---

[2] The government notes that App. Note 1 to § 4B1.2 states that "[u]nlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a 'controlled substance offense.'"   While it is unclear whether the application of this section of the Commentary would dictate a different result here, because the Commentary "adds to, rather than interprets, the Guidelines, the Commentary 'deserves no deference' and the 'text of [the Guideline] controls.'"   *United States v. Derringer*, 844 Fed. Appx. 802, 812 (6th Cir. 2021) (citing *Havis*, 927 F.3d at 386-87).

Respectfully submitted,

JOSEPH C. MURPHY, JR.
Acting United States Attorney

By:    */s/ William Joshua Morrow*
William Joshua Morrow
Tennessee Bar No. 026779
Assistant United States Attorney
109 South Highland, Suite 300
Jackson, Tennessee 38301
(731) 422-6220
Josh.Morrow@usdoj.gov

## CERTIFICATE OF SERVICE

I, William Joshua Morrow, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing pleading has been sent via electronic filing to:

Stephen R. Leffler, Esq.
707 Adams Ave.
Memphis, Tennessee 38105

This, the 7th day of September, 2021.

/s/ William Joshua Morrow
WILLIAM JOSHUA MORROW