**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

UNITED STATES OF AMERICA,

     **Plaintiff,**

**VS.**                                                              **No. 1:19-cr-10127-STA**

**JODIE STACEY,**

     **Defendant.**

---

**SENTENCING MEMORANDUM OF DEFENDANT**

---

Comes now the defendant, Jodie Stacey, by counsel, and would hereby file the following sentencing memorandum with regard to the presentencing factors contained in the Presentence Investigation Report. Sentencing in this matter is scheduled for September 28, 2021.

**18 U.S.C. §3553 FACTORS**

**THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

To say that Jodie Stacey had a most difficult childhood would not be hyperbole. One of eleven children, he endured an alcoholic father who physically abused Mr. Stacey and the rest of the family, a suicide attempt and institutionalization at the age of six, placement in foster care,

1

physical abuse at the hands of the foster parents and more suicide attempts. He attained a modicum of stability when placed in the care of his two grandmothers.

Mr. Stacey objects to paragraph 5 which states, "Investigators met with Jodie Stacey at his residence at 4619 Highway 45 South in McNairy County, Tennessee, to discuss the information. Investigators asked Jodie Stacey about a rifle that was stolen during the robbery, and Jodie Stacey advised he was holding a firearm for Wendy Grey." In fact, on April 10, 2019, Mr. Stacey lived at 375 Gray Road, Michie, Tennessee. Stacey also denies that he told investigators that he was holding a firearm for Wendy Grey. The firearm in question was involved in a purchase of furniture by Mr. Stacey's daughter, Chayenne Stacey, who, on April 10, 2019, resided at 4619 Highway 45 South in McNairy County, Tennessee. The firearm at all times relevant to this case was kept by Chayenne Stacey at the Highway 45 South location.

Stacey objects to paragraph 6 which states, "Jodie Stacey produced a shotgun, wrapped in a towel, from underneath a television stand in his living room." The living room referred to in paragraph 6 was the living room of Chayenne Stacey, not Jodie Stacey, as discussed above.

**THE GUIDELINES PROMULGATED BY THE SENTENCING COMMISSION**

Jodie Stacey agrees with the government's Position Paper arguing that the defendant's base offense level should be set at 14 under U.S.S.G. § 2K2.1(a)(6)(A). Without rehashing the government's argument, Stacey would add that Tennessee state law interpretations of Tenn. Code Ann. § 39-17-435 show that the outer edges of initiation under Tennessee law – i.e., the "least culpable conduct" that the law proscribes – extend past the Guidelines' definition of manufacture.

2

In State v. Dunn, 2016 Tenn. Crim. App. LEXIS 272 (Tenn. Crim. App. Apr. 12, 2016), the Tennessee Court of Criminal Appeals found that the evidence was sufficient to support the defendant's conviction of initiation of the process to manufacture methamphetamine where officers investigating a single-vehicle collision conducted a search of the defendant's crashed vehicle. In the cargo area they found a clear, plastic bag "with a funnel sticking out of it." The bag also contained two crumpled coffee filters inside the funnel, plastic tubing attached to a plastic bottle cap, lithium batteries, a pack of unused coffee filters, and a cold compression pack that had been cut open. The plastic tubing was discolored and the open cold compression pack with only a small amount of ammonium nitrate remained at the bottom of the bag. The only time the officer had seen a cold compression pack opened in such a manner was in association with methamphetamine labs. No methamphetamine was found in the vehicle. The defendant admitted he had possession of the vehicle for four days prior to the discovery of the plastic bag and to using methamphetamine in the 24 to 48 hours prior to the bag's discovery. On that proof, the Court of Criminal Appeals sustained the defendant's conviction under the statue.

The federal law definition of "manufacture" means the "production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis." The defendant in Dunn was found guilty under the initiation statute for merely possessing the means by which methamphetamine was to be manufactured. That exceeds the bounds of the federal definition of a controlled substance offense and precludes the application of Section 2K2.1(a)(2) which specifies a base offense level of 24 for a violation of 18 U.S.C. § 922(g) when "the defendant committed

3

any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."

**THE NEED FOR THE SENTENCE IMPOSED TO ACCOMPLISH THE PURPOSES OF SENTENCING**

   **A. To impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2)**

Defendant suggests that a 37-month sentence to run concurrent with any period of incarceration he receives in McNairy Circuit Court Docket No. 2011- CR-2845 and McNairy County Circuit Court Docket No.: 2012-CR- 2922B. He is being held on violation of probation warrants in each of those cases. The triggering event for the violations is this case now before the Court. A concurrent sentence is authorized by U.S.S.G. § 5G1.3(d). The 37-month sentence along with the time running concurrent with any sentences for the state court probation violation would be sufficient, but not greater than necessary to comply with the goals of sentencing.

It also is appropriate in view of the § 3553 factors. A sentence of 37 months satisfies the need for specific and general deterrence, the need to promote respect for the law and provide just punishment. None of these factors would be in any way diminished by running the federal sentence in this case concurrent with the undischarged state sentences.

To not make the sentence in this case concurrent, Mr. Stacey could be facing far more time than the 120-month statutory maximum. In Docket No. 2011-CR-2845, a revocation would result in a custodial sentence of 8 ½ years and in Docket No.: 2012-CR- 2922B, a revocation would result in a custodial sentence of 9 ½ years. Mr. Stacey then faces a potential sentence of 252

months, or 21 years, all arising out of the same set of facts. Without running the federal sentence concurrent to the state sentences, the Court risks the prospect of a sentence that is exponentially more than necessary to achieve the goals of sentencing.

**B.  To impose a sentence that is to reflect the seriousness of the offense**

The offense is very serious. Congress, however, has indicated its intention to somewhat mitigate the severity of this particular offense by providing a maximum sentence of 120 months and a fine that pales in comparison to the fines provided for many offenses.

**C.  To impose a sentence that will promote respect for the law**

There is a difference in promoting respect for the law and promoting obedience to the law. "Respect" focuses on society's acceptance of a law as being proper, whereas "obedience" focuses on getting actors to comply with laws.

The circumstances of this case should promote respect for the law because crimes involving firearms are currently rampant and the result is almost always tragic. A 37-month sentence shows the public that there are serious consequences for a defendant who possesses a firearm when they are prohibited from doing so even when the tragic result does not occur. By running the federal sentence concurrent with the state sentences, the public sees that the Court is taking the precaution of structuring the sentence in a way that will limit the combined state and federal sentences for this one criminal act from being excessive.

**D.   To impose a sentence that will afford adequate deterrence to criminal conduct**

There are two levels of deterrence to consider: general deterrence and specific deterrence. General deterrence refers to the attempt to discourage society at large (potential offenders) from committing criminal offences, by using examples of heavy sentences to show the consequences of committing a particular crime.   The theory of general deterrence is that people are afraid of being punished, and the greater the punishment, the less likely a person will commit a crime, due to that fear.

However, a person is unlikely to decide to engage in criminal activity based solely on the punishment that could result. It ignores a person's upbringing, morals, and education. In fact, it is more likely that the certainty of being convicted will have an impact on deterring crime, rather than the severity of the sentence. If a person is sure that he or she will be caught and punished for the crime, the person is less likely to do it regardless of how severe the punishment is. (Centre for Education, Law and Society)

The prosecution of Mr. Stacey was the result of a multiple jurisdictional investigation. Both Mississippi and Tennessee law enforcement worked hand in hand to develop this case. Any person who thinks they can get away from justice in one jurisdiction by fleeing to another jurisdiction will see that they cannot assume that they can evade justice. That is more likely than a lengthy sentence to convince the nescient criminal to refrain from such destructive behavior.

Specific deterrence refers to the attempt to discourage Mr. Stacey in particular from repeating a crime. The theory is that people convicted of a crime will balance the pros and cons of committing that crime, and the more severe the punishment, the more the balance will shift

6

toward obeying the law. The government has delivered a message to Mr. Stacey that it will not be deterred in the enforcement of firearms laws. Specific deterrence has been delivered.

### E. To impose a sentence that will protect the public from further crimes of the defendant.

Mr. Stacey has exhibited conduct that supports the conclusion that he is not a threat to the public. When asked to turn over the firearm in his daughter's house, he did so freely after being informed by law enforcement that he would not be prosecuted for possessing the firearm.

To further assure the protection of the public from further crimes by Mr. Stacey, it is important to begin the work of re-entry the moment he goes into the custody of the Bureau of Prisons. The Court has the discretion to recommend programs that provide him with the tools he needs to function as a productive citizen within the community upon release and, thus, further mitigate any threat he poses to the community. Programs specifically geared to Mr. Stacey's vulnerabilities include:

Cognitive Processing Therapy (CPT) (a 12-session, structured cognitive-behavioral therapy found to be effective for various mental health symptoms);

Basic Cognitive Skills (a behavior therapy program which teaches offenders about rational self-counseling, the rules for rational thinking, and the use of a Rational Self-Analysis to better manage their lives); and

Emotional Self-Regulation (a cognitive-behavioral curriculum designed to help individuals better manage their emotions such as anxiety and depression).

**G.    To impose a sentence that will provide needed training, medical care, or other correctional treatment in the most effective manner.**

Mr. Stacey has long-standing mental health problems and would benefit from appropriate mental health treatment through the United States Bureau of Prisons. Even though Mr. Stacey feels that he has overcome his addiction to methamphetamine, he has a history of drug abuse and would benefit from drug abuse treatment.

## VII.    THE NEED TO PROVIDE RESTITUTION TO VICTIMS.

There is no need for restitution in this case because the victim is society. The Presentence Report reflects a negative cash flow for Mr. Stacey that makes a fine in this case unrealistic.

Respectfully submitted,
LAW OFFICE OF
STEPHEN R. LEFFLER, P.C.

s/Stephen R. Leffler (11038)
Attorney for Defendant
707 Adams Ave.
Memphis, Tennessee 38105
(901) 527-8830

## Certificate of Service

I hereby certify that I have served a copy of the foregoing upon:

8

Mr. William Joshua Morrow
Assistant United States Attorney
109 South Highland Avenue, Suite 300
Jackson, TN 38301

Ms. Brianna McGill
United States Probation Officer
109 S. Highland Ave.
Jackson, TN 38301

This 9th day of September, 2021.

s/Stephen R. Leffler